In re Louis FLEET, Debtor.

Louis FLEET, Sarah Morrison and Philadelphia Unemployment Project on Behalf of themselves and all others similarly situated, Plaintiffs,

v.

UNITED STATES CONSUMER COUNCIL, INC., Jack Rhode, Betty Rosi and Deborah Tavares, Defendants.

Bankruptcy No. 81–04969S.
Misc. No. 89–283.
Adv. No. 83–0880S.

United States District Court,
E.D. Pennsylvania.

July 14, 1989.

579

ORDER

FULLAM, Chief Judge.

AND NOW, this 14th day of July, 1989, upon consideration of the Report and Recommendations of Bankruptcy Judge Sur Plaintiffs' Motion for Summary Judgment, dated May 17, 1989, it is hereby ORDERED AND DECREED as follows:

1. The aforesaid Report and Recommendations are ADOPTED by this court.

2. The Plaintiffs' Motion for Summary Judgment is GRANTED in part.

3. Judgment is entered against Defendants UNITED STATES CONSUMER COUNCIL, INC. and JACK RHODE (hereinafter "the Defendants"), jointly and severally, in the following respective amounts in favor of the following individuals:

| NAME | AMOUNT |
| --- | --- |
| Nelson and Miriam Acevedo | $750.00 |
| Frank and Sarah Adams | 750.00 |
| Joan Albright | 750.00 |
| Marietha V. Allen | 750.00 |
| Ruth Allen | 750.00 |
| Eugene and Columbina Amoretti | 750.00 |
| Gloria Anderson | 750.00 |
| Joseph H. Atkinson | 750.00 |
| Eric and Julia Austin | 750.00 |
| Robert L. Ayres | 675.00 |
| Evelyn Bailey | 750.00 |
| Garnell Bailey | 585.00 |
| Russell Bailey | 585.00 |
| Lorenzo and Cora Balmer | 750.00 |
| Leon Baptist, Sr. | 750.00 |
| John and Ethel Barksdale | 750.00 |
| Randolph and Janis Barksdale | 675.00 |
| Zeresh W. Bass | 750.00 |
| Aileen Bayley | 750.00 |
| Norman Baylor | 675.00 |
| Warren Beadling | 750.00 |
| William R. Belmont | 750.00 |
| Thornell Bennett | 750.00 |
| Wendell Bibb | 750.00 |
| Calvin E. Billingslea | 720.00 |
| Jerome R. Bittings | 675.00 |
| Catherine Bogan | 750.00 |
| Sarah C. Bowers | 675.00 |
| Mary N. Bowers | 750.00 |
| Zelda Bowman | 750.00 |
| Joseph and Eileen Braitling | 750.00 |
| Richard S. Branco | 675.00 |
| Matthew Broaddus | 675.00 |
| Edward and Mary Brooks | 750.00 |
| Elizabeth Brooks | 750.00 |
| Rosaline Brooks | 750.00 |
| Tommie Broome | 750.00 |
| Albert Brown | 750.00 |
| Christine Brown | 750.00 |
| Mark A. Brown | 750.00 |
| Shyvette Brown | 675.00 |

Henry J. Sommer, Community Legal Services, Inc., Philadelphia, Pa., for debtor/plaintiffs.

David E. Johnson, Jr., Director, Office of Attorney Ethics, Trenton, N.J.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

Dean Sutton, Sparta, N.J., Referral Attorney.

Deborah A. Cacowski, Chief Disciplinary Counsel, Philadelphia, Pa.

Barry J. Hockfield, Hockfield, Hasner & Weiss, P.C., Cherry Hill, N.J., for defendants.

Thomas Flynn, Bar Counsel, Washington, D.C.

David P. Daniels, Camden, N.J., Referral Attorney.

Charles Broida, Columbia, Md., Referral Attorney.

| NAME | AMOUNT | NAME | AMOUNT |
|---|---|---|---|
| Wilhelmina Brown | $750.00 | Joseph Foreman | $750.00 |
| William and Florence Brown | 750.00 | Ella Fortson | 750.00 |
| Irene Bryant | 750.00 | Nora Fountain | 750.00 |
| Esther Bundy | 750.00 | Arthur and Margaret Fulton | 750.00 |
| Francis E. Burns/Joanne Forvour | 750.00 | Ronald and Myrtle Furman | 585.00 |
| Rosalind Burrell | 750.00 | Patricia Risley Genoese | 585.00 |
| Shirley Burrell | 675.00 | Gerald & Gloria Givens | 675.00 |
| Sharon E. Buxton | 750.00 | Byron R. Goldner | 750.00 |
| Leslie and Vivian Byers | 750.00 | James and Annie Green | 750.00 |
| McArthur and Shirley Bynum | 585.00 | Charles and Sylvia Handy | 750.00 |
| Wendy Callahan | 555.00 | Fred J. Harris | 750.00 |
| Carl J. Carlamere | 750.00 | Nathan and Dollie Harvey | 600.00 |
| Georgianna Carney | 585.00 | Robert Hausner | 675.00 |
| William and Joann Carter | 675.00 | James and Mary Herriot | 750.00 |
| Harry Carvell | 750.00 | Thomasina Hill | 750.00 |
| Mary Ann Chambers | 750.00 | Pamela Hills | 750.00 |
| William Chavious | 750.00 | Grafton and Pamela Hunley | 585.00 |
| Dean and Linda Chester | 750.00 | Neil J. Insogna | 750.00 |
| Debra Clark | 750.00 | Carol Ann Jackson | 750.00 |
| John Clark | 750.00 | David Jackson | 750.00 |
| Pamela Clary | 750.00 | Joy P. Jackson | 750.00 |
| Gwendolyn Coleman | 675.00 | Marilyn Jackson | 675.00 |
| Michael K. and Deborah Collarin | 675.00 | Rosa Jackson | 675.00 |
| Willis and Julia Collins | 750.00 | LaVetta James | 750.00 |
| Robert and Julia Conway | 750.00 | Maurice James | 585.00 |
| Wilbert J. Conway | 750.00 | Arthur and Patrice Jamieson | 750.00 |
| Robert Cook | 675.00 | Joseph and Rosie Jefferson | 750.00 |
| John and Martha Coombs | 675.00 | Carol Jenkins | 750.00 |
| Raymond and Peggy Cooper | 750.00 | Riccardo D. Jenkins, Jr. | 675.00 |
| Patricia Patterson Cosgrove | 675.00 | Diane Johnson | 750.00 |
| Larry and Avis Cottrell | 750.00 | Lucinia Johnson | 750.00 |
| Johnnie R. Crosland | 750.00 | Angela Samuels Jones | 750.00 |
| Martenia Cupe | 750.00 | Janice L. Jones | 750.00 |
| Edward J. Czwartacki | 750.00 | Marva Judd | 675.00 |
| Christal Daniels | 750.00 | Wayne and Margaret Kamman | 750.00 |
| George Davis | 750.00 | Regina A. Kellam | 585.00 |
| Mae Davis | 675.00 | Melvinia Kennedy | 750.00 |
| Silas and Eugenia L. Davis | 675.00 | Francis V. Kiger | 750.00 |
| William and Georgia Davis | 750.00 | James Kimmel | 750.00 |
| Philip and Eva DelVechio | 585.00 | Walter and Priscilla King | 750.00 |
| Elaine Harper Dennis | 585.00 | John and Karen Klumpp | 585.00 |
| Claire Deshields | 750.00 | Walter and Lois Kwilyn | 750.00 |
| Alfred and Rosemary DeWalt | 675.00 | Carol Lassiter | 750.00 |
| Maxine Dixon | 750.00 | Catherine Collins Lazier | 750.00 |
| Theodore B. Dixon | 750.00 | Carol Stokes Leslie | 450.00 |
| Leonard Dorsey, Jr. | 750.00 | Marie and John Lloyd | 750.00 |
| Hinton Douglas | 585.00 | Thomas and Cheryl Lowden | 600.00 |
| Myrtle Dublin | 750.00 | Ola Bethea Louis | 750.00 |
| Roy and Mary Dukes | 750.00 | Frank and Terry Marques | 585.00 |
| Bernard S. Dunn | 675.00 | Booker T. McClain | 750.00 |
| Rosemary Dunn | 675.00 | Anna McCray | 750.00 |
| Thomas and Linda Dykes | 750.00 | Larry and Kathleen McCray | 750.00 |
| Morina Easterling | 750.00 | Robert McKay | 750.00 |
| Robert and Yvonne Edge | 750.00 | Jennings S. McKinnon | 585.00 |
| Billy and Jamie Ellis | 675.00 | Joseph and Geraldine McVeigh | 675.00 |
| Patricia Ellison El | 750.00 | Wesley and Janet Melvin | 750.00 |
| Evelyn A. Estrada | 750.00 | Leonard Morgan | 750.00 |
| John and Dolores Felder | 585.00 | Patricia Morris | 675.00 |
| Mabel Felder | 750.00 | Mary Moseley | 675.00 |
| Lillie Fisher | 675.00 | Eunice D. Murphy | 750.00 |
| Albert and Nina Fisk | 750.00 | Joseph and Elizabeth Murray | 750.00 |
| Louis Fleet, Jr. | 675.00 | Bareenf Muwwakkil | 750.00 |
| James J. and Bessie L. Fleming | 675.00 | David and Anna Nelson | 750.00 |
| Yvonne Fleming | 750.00 | Shirley Parrish | 675.00 |
| Gloria Ford | 750.00 | Ralph E. and Maria R. Parsons | 675.00 |
| Marjorie Ford | 750.00 | Mr. and Mrs. William Patton | 750.00 |
| Thomas Ford, Sr. | 585.00 | Emery and Linda Peine | 750.00 |
| | | Herbert A. and Patricia Perry | 675.00 |

| NAME | AMOUNT | NAME | AMOUNT |
|---|---|---|---|
| John and Dorothy Phillips | $675.00 | William Walls | $750.00 |
| Camille Pierce | 750.00 | Henry and JoAnn Wasielewski | 585.00 |
| Pierino and Ann Pinto | 750.00 | Dorothy Whitehead | 675.00 |
| Eddie and Janet Potts | 750.00 | Jay W. and Juanita W. Wicks | 675.00 |
| James and Karen Powell | 750.00 | Leuray Wiggins | 675.00 |
| Ronald Preston | 750.00 | Walter and Lydia Wiggins | 750.00 |
| Tex Ragin | 750.00 | Dwight Wilkins | 750.00 |
| Rosa Ramos | 675.00 | Alvin and Wynona Williams | 750.00 |
| Linda Rawls | 585.00 | Calvina Williams | 750.00 |
| Donna and Frank Read | 750.00 | G. and K. Williams | 750.00 |
| Pamela Reeves | 585.00 | Gregory and Wanda Williams | 750.00 |
| Allen Revels | 750.00 | James D. and Alice Williams | 675.00 |
| George and Bennie Reynolds | 750.00 | Kate Williams | 585.00 |
| Gloria Cook Rhines | 675.00 | Lillian Williams | 585.00 |
| George and Joyce Rhoads | 750.00 | Patricia Delgado Williams | 675.00 |
| Diane Richardson | 585.00 | S. and C. Williams | 750.00 |
| Christine Rizzo | 750.00 | Stephen and Demetria Williams | 750.00 |
| Robert and Nancy Rizzo | 750.00 | Terrie Williams | 675.00 |
| Pamela Roberts | 750.00 | Louis Wilson | 750.00 |
| Elmus Robertson | 750.00 | George D. III and Wilma Wohltman | 750.00 |
| Barbara Robinson | 675.00 | Grady and Annie Woody | 750.00 |
| Victor M. and Audelis Rodriguez | 750.00 | Albert and Gloria Wray | 750.00 |
| Arthur Leon Rogers | 750.00 | Richey R. and Hazel E. Wyche | 750.00 |
| Lillian K. Rogers | 750.00 | LaWayne and Mary Yoey | 750.00 |
| Harmon and Shirley Rollerson | 750.00 | Karen Zaborowski | 750.00 |
| Merita Rollins | 750.00 | Joseph E. Zawacki | 675.00 |
| Blanche Roman | 780.00 | | |
| Calvin A. and Mary A. Ross | 750.00 | **Total** | **$234,741.00** |
| Durel F. Ross | 675.00 | | |
| Susan Watson Roth | 750.00 | | |
| Gil and Loretta Royster | 675.00 | | |
| Vernel Sanders | 675.00 | | |
| John and Nancy Santoro | 675.00 | | |
| Marconia Satterfield | 750.00 | | |
| Sarah H. Savage | 750.00 | | |
| Charles and Georgia Scoggins | 750.00 | | |
| Joseph and Towanda Serious | 750.00 | | |
| Iluminada Serrano | 750.00 | | |
| Perry L. Shaw | 750.00 | | |
| Paul and Annette Signal | 750.00 | | |
| Yvonne Simmons | 750.00 | | |
| Theodore and Mary Sinclair | 675.00 | | |
| Angelika Skalka | 750.00 | | |
| Sheila Sledge | 750.00 | | |
| Evelyn C. Small | 675.00 | | |
| Henry and Eris L. Smith | 675.00 | | |
| Mary Lee Smith | 750.00 | | |
| Thelma Smith | 750.00 | | |
| Gary and Marcia Sprague | 750.00 | | |
| Edward and Mary Springer | 750.00 | | |
| Ruth Stanley | 750.00 | | |
| Ervin R. Strong | 750.00 | | |
| John and Joyce Stroud | 675.00 | | |
| Richardean Tarkington | 750.00 | | |
| Jimmy and Mable Tarver | 750.00 | | |
| John and Sharon Taylor | 675.00 | | |
| Launcelot Taylor | 750.00 | | |
| Robert and Dorothy Taylor | 750.00 | | |
| Zora and Ann Thomas | 750.00 | | |
| Hector and Nelly Torrez | 750.00 | | |
| Linda Tyree | 675.00 | | |
| Chester L. Vincent | 675.00 | | |
| Doris Walker | 750.00 | | |
| Gladys Walker | 750.00 | | |
| Jewel Walker | 750.00 | | |
| John H. Walker | 750.00 | | |
| Shervonne Luck–Walker | 675.00 | | |
| Joui L. Wallace | 750.00 | | |

4. Consistent with the Order of the Bankruptcy Court of January 20, 1989, the parties are directed to confer to resolve the issue of attorney's fees due to the Plaintiffs' counsel, but, if they are unable to do so, and the Plaintiffs have made a reasonable demand, the Plaintiffs' counsel is accorded an opportunity to file a Motion in the bankruptcy court requesting attorney's fees and costs, including compensation on the fee application if such is necessary, per N.J.S.A. 57:8–19 and 73 P.S. § 201–9.2(a), within twenty days of this Order, said Motion to be procedurally in conformity with *In re Meade Land and Development Co., Inc.,* 527 F.2d 280 (3d Cir.1975); and *In re Mayflower Associates,* 78 B.R. 41 (Bankr. E.D.Pa.1987).

## REPORT AND RECOMMENDATIONS OF BANKRUPTCY SUR PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

BY: DAVID A. SCHOLL, UNITED STATES Bankruptcy Judge.

In the aftermath of our Opinion of December 8, 1988, adopted by Order of Chief Judge John P. Fullam of the district court of January 11, 1989, and reported at 95 B.R. 319, is a motion of the Plaintiffs re-

questing that we enter an order recommending entry of summary judgment on behalf of 291 individual members of their class.[1] Since we find that the defendants are, for the most part, resisting this motion with mere arguments rather than with affidavits or any other acceptable means of establishing that there is a genuine issue of material fact present as to many of the claims in issue, we shall recommend that the motion be granted as to most of the claimants.

We believe it appropriate to grant judgment in the amount requested as to 264 individuals; allow a revised figure as to six more; and deny any relief as to 21. We are convinced that the requests of those 270 claimants in whose favor we enter judgment, 99 of which are supported by written contracts and/or receipts, are based upon figures which are within the range of charges imposed by the Defendants for their "services." However, the remaining 21 claimants assert, without supporting receipts, payments to the Defendants in excess of the range of charges we previously found had been imposed by the Defendants. Therefore, we believe that they confused payments made to other parties, such as their "referral attorneys," with those paid to the Defendants. Since we cannot ascertain the amounts that they actually paid to the Defendants, the record is insufficient to award any judgment in their favor and we are compelled to deny the motion as to them and conduct a hearing as to their requests.

This proceeding has already been the subject of four prior published Opinions.

We will herein briefly summarize the history of these proceedings to date, referring the reader to those Opinions for more detail. See In re Fleet, 95 B.R. 319, 323–24 (E.D.Pa.1989) (hereinafter "Fleet V"); In re Fleet, 76 B.R. 1001, 1003–04 (Bankr.E.D. Pa.1987) (hereinafter "Fleet III"); Fleet v. United States Consumer Council, Inc., 70 B.R. 845, 846–50 (E.D.Pa.1987) (hereinafter "Fleet II"); and In re Fleet, 53 B.R. 833, 835–36 (Bankr.E.D.Pa.1985) (hereinafter "Fleet I").[2]

In Fleet I, our predecessor, the Honorable William A. King, Jr., denied a motion of the Defendants to dismiss the Complaint and held that this proceeding was noncore, but related to the bankruptcies of the original named individual Plaintiffs, Louis Fleet and Sarah Morrison. In Fleet II, the district court adopted our recommendation that a motion to set aside a default judgment entered against USCC and Rhode be denied. In Fleet III, and a subsequent Order of October 1, 1987, following therefrom, we allowed the Plaintiffs to maintain this proceeding as a class action, pursuant to Bankruptcy Rule (hereinafter "B.Rule") 7023 and Federal Rule of Civil Procedure (hereinafter "F.R.Civ.P.") 23(b)(3). However, we also held that the default judgment that we had sustained in Fleet II could be extended only to the named plaintiffs.[3]

After we had scheduled a trial in this matter subsequent to our Opinion in Fleet III, we granted, on May 25, 1988, the Plaintiffs' unopposed motion to bifurcate the trial of this proceeding into a phase to determine liability and a phase to ascertain

---

1. On May 11, 1989, the Plaintiffs submitted Supplemental Certifications on behalf of 15 additional individuals. It appears that each of these parties submitted a Certification to the Plaintiffs' counsel *after* the bar date of March 31, 1989, established per the request of the Plaintiffs' counsel, in our Order of January 17, 1989. *See* page 583 *infra.* Clearly, these parties were also not included in any motion filed on or before April 17, 1989, as was also required by that Order. *Id.* Therefore, we will not consider any of these submissions. *See also* page 587 n. 4 *infra.*

2. Omitted here is reference to a separate adversary proceeding, reported at 89 B.R. 420 (E.D.

Pa.1988), in which the Plaintiffs successfully enjoined JOHN J. RHODE, also known as Jack Rhode (hereinafter "Rhode"), and his wife, LORRAINE RHODE, from transferring their valuable residence, on the grounds that it had been fraudulently conveyed to them by the corporate defendant herein, the UNITED STATES CONSUMER COUNCIL, INC. (hereinafter "USCC"). This Opinion is generally referred to elsewhere as "Fleet IV".

3. We note that Louis Fleet is among the parties in whose favor we recommend that summary judgment be granted, in the amount of $675.00. However, there has apparently been no submission on behalf of Sarah Morrison.

individual damages to class members. *See Fleet V*, 95 B.R. at 324. The trial as to liability only was then conducted on June 14, 1988, and June 17, 1988. *Id.* After briefing, we submitted a lengthy Opinion containing Proposed Findings of Facts, Proposed Conclusions of Law, and Recommendations to the district court on December 8, 1988. *Id.* at 325–40. On January 11, 1989, the district court issued an Order adopting our recommendations *in toto* and entering an Order precisely as we had proposed, including an award of broad injunctive relief against USCC and Rhode. *Id.* at 322.

In an Order accompanying our submissions of December 8, 1988, we directed the parties to attempt to resolve the issue of computation of damages due to each of the Plaintiff class members within thirty (30) days. We believed such a resolution was possible, because we had determined that damages for each claimant could be readily ascertained by simply trebling the amount that each claimant had paid to USCC. *Id.* at 336–37. We further ordered that, in the event that resolution was unsuccessful, the Plaintiffs were to file a motion seeking damages for all individual class members on or before January 17, 1989, and the Defendants were to respond thereto by January 31, 1989.

This directive sparked a motion by the Plaintiffs, on January 6, 1989, whereby they set forth a detailed procedure for determination of damages of individual class members. These included the mailing of a specific proposed notices to known individual class members and publication notices on or before January 27, 1989; the establishment of March 31, 1989, as a bar date for claimants to respond to these notices by submitting a specified certification form to the Plaintiffs' counsel; a directive that the Plaintiffs file any motion for summary judgment on the issue of individual damages on or before April 17, 1989; that the Defendants respond to any such motion on or before May 8, 1989; and that, if necessary, a hearing to determine damages would be conducted on May 30, 1989. In response to the Defendants' objections on this point, we expressly stated that we were not ruling that the certification forms which individual class members were required to remit to the Plaintiffs' counsel by the March 31, 1989, bar date "may be submitted as the sole basis for the entry of a judgment as to any class member." Instead, we stated that a further motion for summary judgment or trial would be necessary. In all other respects, however, we granted the Plaintiffs' motion.

The motion for summary judgment before us was filed on April 17, 1989, and answered on May 8, 1989, as contemplated in the January 17, 1989, order. Attached to the Plaintiffs' motion were completed certifications, on the forms which had accompanied the notice approved by our Order of January 17, 1989, on behalf of 291 individuals, with contracts and receipts attached to the submissions of those claimants who had retained same.

We have carefully reviewed every one of these submissions. We find that 264 of the certifications contended that the amount paid to USCC was between $195 and $250. One party, Blanche Roman, asserted that the amount that she paid was $260. In *Fleet I*, we found that USCC's charges ranged between $195 and $260, and therefore we found all of these certifications consistent with our earlier findings. Of this total of 265 certifications received, we found that 94, or about 35 percent, documented their certifications with contracts and receipts. In every case, the figures on the Contracts and receipts were consistent with the amount set forth on the respective certification forms.

The additional 26 certifications claimed remittances to USCC between $300 and $1,292. However, of this number, only five remitted contracts or receipts. Of those including receipts, three provided receipts for $250, one provided a receipt for $225, and one provided a receipt in the amount of $800. However, the individual producing the $800 receipt, Walter Kwityn, was among 19 class members who had testified at the trial on June 14, 1988. At that time, he stated that he had been faced with an imminent foreclosure of his home mortgage when he initially visited USCC's of-

fices, requiring the immediate referral of his case to an attorney by USCC. As a result, the check for USCC's fee, which he identified as $250, was combined with a mortgage payment which was remitted in connection with the planned immediate bankruptcy filing. His facts therefore fit the same consistent pattern as all of the other claimants. We conclude that all of the parties designating payments to USCC in excess of $260 failed to observe the admonition on the certification forms themselves to list only the amount paid to USCC, not money paid to an attorney, to the bankruptcy court, and for some purpose other than simply to USCC for its fee.

Although our Order of January 17, 1989, stated that the Defendants were to file "any responses *and* opposing Brief" by May 8, 1989, the only reply filed by the Defendant to the Plaintiff's motion was a six-page opposing Brief. The bases recited therein for opposing the motion were as follows: (1) The certification forms were merely "check-off letters" not in the form of "adequate affidavits;" (2) Many of the claimants failed to attach receipts; (3) The attempts to claim payments to USCC in excess of $260 were clearly erroneous; and (4) The facts must be viewed in a light most favorable to the Defendants. The conclusion urged upon by the Defendants from considering all of these contentions together seems to be that none of the claimants should recover without attending a trial at which they would be subject to cross-examinations by the Defendants' counsel. Obviously, this is perceived as a means of discouraging recoveries, as the demands of many parties would be reduced by travel costs, lost wages, and other disincentives associated with requiring claimants to appear in court.

Disposition of this motion must be made in accordance with B.Rule 7056, which incorporates F.R.Civ.P. 56 in its entirety. Relevant to our disposition here are F.R.Civ.P. 56(a), (c), and (e), which provide as follows:

Rule 56. Summary judgment.

(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

. . . . .

(c) Motion and Proceedings Therein. The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

. . . . .

(e) Form of Affidavits; Further Testimony; Defense Required. *Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such factors as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.* Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. *When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.* If the adverse party

does not so respond, summary judgment, if appropriate, shall be entered against the adverse party (emphasis added).

The Supreme Court has recently issued several decisions interpreting F.R.Civ.P. 56. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Mitshushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "These cases convey the distinct, if not explicit, message that summary judgment is not 'a disfavored procedural shortcut.'" M. Nelken, *One Step Forward, Two Steps Back: Summary Judgment After Celotex,* 40 HASTINGS L.REV. 53, 53 (1988) (quoting *Celotex, supra,* 477 U.S. at 327, 106 S.Ct. at 2555). In particularly *Celotex,* the Court emphasizes the consequences of the failure of the party opposing a summary judgment motion to recognize that he "may not stand on the allegations of his pleading." 6 J. MOORE, FEDERAL PRACTICE, ¶ 56.22[2], at 56–767 (2d ed. 1988). Thus, the Court states, in *Celotex,* that "the plain language of Rule 56(a) mandates the entry of summary judgment after adequate time for discovery and upon motion," against a party who fails to make a showing sufficient to establish "that there is a genuine issue as to any fact which is an element essential to that party's case." 477 U.S. at 322.

The Court of Appeals for the Third Circuit, divorcing itself from earlier decisions which had brought about the addition of the last two sentences of F.R.Civ.P. 56(e) in 1963, *see* 6 J. MOORE, *supra,* ¶ 56.22[2], at 56–767 to 56–768, has also recognized the significant burdens which are placed upon a party seeking to oppose a motion for summary judgment. In *Dowling v. City of Philadelphia,* 855 F.2d 136, 140, 142–43 (3d Cir.1988), the Court emphasizes the risks to which the opposing party subjects itself in declining to submit counter-affidavits in opposition to a Rule 56 motion. *See also, e.g., DeLong Corp. v. Raymond Int'l, Inc.,* 622 F.2d 1135, 1139, 1141–42 (3d Cir.1980). In *Childers v. Joseph,* 842 F.2d 689, 693–95 (3d Cir.1988), the Court of Appeals clarified

the rule of law announced in *Celotex* to require that the non-moving party cite the court to specific facts in the record which tended to contradict those asserted by the party moving for summary judgment if it wishes to withstand a Rule 56 motion.

The necessity of the non-moving party to assert facts as opposed to arguments to support a defense to a summary judgment motion is thus somewhat colorfully expressed in *Robin Construction Co. v. United States,* 345 F.2d 610, 614 (3d Cir. 1965):

> As has often been pointed out, one who resists summary judgment but does not contradict the operative facts in his adversary's affidavit must utilize discovery, and suspicion along without discovery is not enough.... It is not enough to rest upon the uncertainty which broods over all human affairs or to pose philosophic doubts regarding the conclusiveness of evidentiary facts. In the world of speculation such doubts have an honored place, but in the daily affairs of mankind and the intensely practical business of litigation they are put aside as conjectural....

*Accord, e.g., Edwards v. Crosby,* 540 F.Supp. 60, 63 (E.D.Pa.1982) ("Counsel's arguments, ... cannot overcome ... affidavits.").

We disagree with the suggestion of the Defendants that the certification forms may not constitute appropriate affidavits pursuant to F.R.Civ.P. 56(e). The claimants executing same are cautioned, by the text of the forms, that they are doing so under penalty of perjury. The signature of a party, accompanied by a statement that the contents are believed to be true, is alone sufficient verification of any pleading under the Rules. *See* F.R.Civ.P. 11; and 2A J. MOORE, *supra,* ¶ 11.05, at 11–31 to 11–32. The form of the certifications used here was expressly approved by this court as appropriate, and only after the Defendants were provided with an opportunity to comment on its acceptability. Hence, the form has already been deemed acceptable by this Court. The certifications were made on personal knowledge of the claim-

ants, and clearly the claimants were competent to testify as to their own payments to USCC. Furthermore, the certifications contained precisely the information relevant to the determination of the amounts sought by the claimants, *i.e.*, the sums which they paid to USCC.

■ We also disagree with the Defendants' suggestion that we cannot accept the certifications of the claimants as conclusive unless they are accompanied by documentation in the form of a contract and/or a receipt. Non-production of documentary evidence to support a claim does not require summary rejection of testimonial evidence supporting it. *See In re Huderson*, 96 B.R. 541, 548–51 (Bankr.E.D.Pa. 1989). For several reasons, we draw no adverse inferences from the failure of about 65 percent of the claimants to support their claims with documentation here. *Compare id.* at 548. First, there is no evidence that the claimants have such documentation in their control, given the lapse of time (at least six years) between the claimants' respective transactions with USCC and their awareness that retention and production of same would be relevant to their claims against the Defendants in a lawsuit. Secondly, we observe that Rhode has never produced any documentation on his part to support any of his claims, consistently contending that he lost all of the records of USCC in one of his movements during his separation from his wife. In light of this contention, conveniently invoked by Rhode from time to time to support his vague and inconsistent responses to certain of the Plaintiffs' inquiries, it does not lie gracefully in his mouth to contend that the Plaintiffs should be faulted for losing what, to them, must have appeared totally worthless documents. Finally, the certifications filled out by the claimants without supporting documentation are, by and large, supported in their accuracy by their congruity to the certifications of those with documentation. The only exceptions are the 26 parties contending that they paid USCC more than $260. Our skepticism that these certifications are accurate causes us to reject them. However, it does not seem logical to reject over 170 seemingly-accurate, but undocumented, certifications just because 26 other certifications are seemingly inaccurate.

In any event, if the Defendants believed that the certifications were generally procedurally defective, their remedy was to move to strike them. *See In re Jackson*, 92 B.R. 987, 991–92 (Bankr.E.D.Pa.1988); and 6 J. MOORE, *supra*, ¶ 56.22[1], at 56–761. Having failed to do so, such general procedural defects are waived. *Id.* We will, however, consider the substance of these objections where same are justified. *See Jackson, supra*, 92 B.R. at 992.

The Defendants' failure to "set forth specific facts showing that there is a genuine issue for trial," as required by F.R. Civ.P. 56(e), is fatal to much of their defense of this motion. The sole specific target of the Defendants on the ground that the averments contained therein are most probably inaccurate are confined to the 26 instances (about eight (8%) percent of the certifications) in which the respective claimants contend that they remitted in excess of $260 to USCC. No specific facts or specific criticism of any kind is levelled at the other ninety-two (92%) percent of the certifications, the responses contained in which have every appearance of accuracy. No logical objection whatsoever is mounted as to any of the 94 claimants who *have* supported a contention that they paid USCC between $195 and $260 with contracts and/or receipts, which our careful individual inspection indicates appear totally legitimate. Thus, with the exception of the claimants asserting payments of more than $260 to USCC, we perceive no genuine issues of material fact to exist such as would require a trial. Therefore, except as to the individuals discussed hereafter, we believe it totally appropriate to recommend judgments as to the respective claimants in the proposed sums, irrespective of how favorably to the Defendants we weigh the evidence presented.

The largest group of individuals to which we are obliged to deny the relief sought is that of the 26 claimants contending that they made payments to USCC in excess of $260 who produced no documentation to

support their requests. We exclude from this group Walter Kwityn. *See* pages 583–584 *supra.* However, we find that he only paid $250 to USCC and therefore this figure will be the basis of his recovery. Similarly, we find that the claimants asserting payments of greater amounts, but who have produced receipts of amounts within the $195 to $260 range, are entitled to have their damages computed on the basis of the lower figures. We shall therefore compute damages for Henry and Eris L. Smith on the basis of the $225 receipt for payment to USCC which they produced and $250 on the basis of receipts in that amount produced by the following claimants: Elizabeth Brooks, Pamela Hills, and David Jackson.

After carefully reviewing each of the certifications, we are obliged to make one other correction. Cheryl Lowden, in filling out a certification form on behalf of her husband Thomas and herself, indicated that the amount that they paid to USCC was "$225 or $200." Rather than gratuitously designating this as a request for $225, as did the Plaintiffs' counsel, we find that the amount paid to USCC by the Lowdens, in our calculations, is $200.

We are prepared to recommend that a judgment be entered as prayed for on behalf of the 264 other individuals who have made requests based on payments of $260 or less to USCC. Added to the six parties discussed in the previous two paragraphs, we are prepared to recommend the entry of a judgment as to 270 of the claimants, as designated by name and amount in the following proposed Order.

4. We also decline to enter any judgment on behalf of any of the 15 claimants included in the Supplemental Certifications filed by the Plaintiffs on May 11, 1989. They have filed claims after a designated "bar date." Adhering to the law concerning late filing of proofs of claims against debtors in this court, we find that the only recourse for these parties is to make an individualized showing of "excusable neglect" for submitting a late filing. *Cf. In re Vertientes, Ltd.,* 845 F.2d 57, 59, 60 (3d Cir.1988).

5. We believe that, even if this matter is non-core, we are empowered to enter an order *denying* a motion for summary judgment as to these parties, as such an order is not a "final order" subject to review by the district court. *See In re*

We are, however, not prepared to recommend entry of any judgment at all as to the remaining 21 claimants who contend that they paid USCC $300 or more, but have no documentary evidence to support a claim in any amount.[4]

In our Order of January 17, 1989, we established May 30, 1989, as the date for a hearing to determine damages if the issue could not be resolved by a motion for summary judgment. We will hold that date for hearings on the damages to be awarded to these 21 parties, all of whom are also named in the following order of this court.[5]

/s/ David A. Scholl
DAVID A. SCHOLL
UNITED STATES BANKRUPTCY JUDGE
3722 United States Court House
Philadelphia, PA 19106–1763

Dated at Philadelphia, Pa, this 17th day of May, 1989

## ORDER ON SUPPLEMENTAL REPORT AND RECOMMENDATION

FULLAM, Chief Judge.

AND NOW, this 14th day of July 1989, upon consideration of the Report and Recommendations of Bankruptcy Judge Supplementing Report and Recommendations of May 17, 1989, in Light of Trial of May 30, 1989, and Plaintiffs' Motion to Amend our Previous Report, dated June 21, 1989, it is hereby ORDERED AND DECREED as follows:

1. The aforesaid Report and Recommendations are ADOPTED by this court.

*One–Eighty Investments, Ltd.,* 72 B.R. 35, 36–37 (N.D.Ill.1987); *In re Kennedy,* 48 B.R. 621, 622 (D.Ariz.1985); *In re Lion Capitol Group,* 46 B.R. 850, 853–54 (Bankr.S.D.N.Y.1985); and 1 COLLIER ON BANKRUPTCY, ¶ 3.01[2][c][i], at 3–56 (15th ed. 1989). *Cf. In re Leedy Mortgage Co.,* 76 B.R. 440 (Bankr.E.D.Pa.1987) (without discussing the issue, we implicitly determined that we were empowered to deny a motion for summary judgment in what was probably a non-core proceeding). However, insofar as we are proposed to *grant* the Plaintiffs' motion and enter a final judgment order as to certain of the claimants, we believe that we must submit proposed findings of fact and conclusions of law to the District Court, pursuant to B.Rule 9033.

2. After trial of May 30, 1989, and upon consideration of the Plaintiffs' Motion to Amend the Report and Recommendations of the Bankruptcy Judge in this proceeding of May 17, 1989, is GRANTED in part.

3. Judgment is entered against Defendants UNITED STATES CONSUMER COUNCIL, INC. and JACK RHODE (hereinafter "the Defendants"), jointly and severally, in the following respective amounts in favor of the following individuals, in addition to those individuals named in the Bankruptcy Judge's Report of May 17, 1989:

| NAME | AMOUNT |
| --- | --- |
| David Andrews | $750.00 |
| Michael Brown | 750.00 |
| Brenda Davis | 750.00 |
| Madeline Dawson | 750.00 |
| Hellena Heath | 585.00 |
| Barbara and James Henderson | 750.00 |
| Barbara Higginbothem | 750.00 |
| Evelyn Randall | 750.00 |
| Lucille Ross | 750.00 |
| Bernard and Garnet Sapp | 750.00 |
| Marguerite Schley | 750.00 |

3. Judgment shall not be entered in favor of any other alleged members of the Plaintiffs' class, unless pursuant to a further Order of this court.

REPORT AND RECOMMENDATIONS OF BANKRUPTCY JUDGE SUPPLEMENTING REPORT AND RECOMMENDATIONS OF MAY 17, 1989, IN LIGHT OF TRIAL OF MAY 30, 1989, AND PLAINTIFFS' MOTION TO AMEND OUR PREVIOUS REPORT

BY: DAVID A. SCHOLL, UNITED STATES BANKRUPTCY JUDGE

On May 17, 1989, we issued a Report to the district court in which we recommended that the Plaintiffs' motion for summary judgment as to the claims of 291 class members be granted as to 270 of them. The 21 parties as to whom the motion was denied were class members who submitted claims based on payments to the Defendants in excess of $260, which we had previously found was the highest amount which the Defendants had charged to their customers. As to these 21 parties, we stated that they would have to appear and testify at trial on the date which we had established in a procedural Order of January 17, 1989, i.e., May 30, 1989.

Five of these parties, Michael Brown, Brenda Davis, Barbara (and James) Henderson, Garnet (and Bernard) Sapp, and Marguerite Schley, appeared at the hearing, and we are now prepared to recommend that a judgment in the amount of $750 be entered for each of them, as we are convinced that they each paid $250 to the Defendants. See In re Fleet, 95 B.R. 319, 336–37 (E.D.Pa.1989). Mr. Brown, who originally listed $300 as the amount of his payment to the Defendants on his certification form, testified that he made payments of $350 to the Defendants, but then described payments of $100 weekly to a referral attorney, David P. Daniels, Esquire, which strongly suggested that one of the $100 installments he claimed had been paid to the Defendants had in fact been paid to Daniels. Ms. Davis stated that she either paid $250 or $386, the latter of which she listed on her certification form, to the Defendants. We believe that $250 must have been the correct sum, since this is consistent with the amounts which almost 300 other parties claim to have paid. The Hendersons originally claimed, on their certification form, to have paid $350 to the Defendants on two occasions. At the hearing, Ms. Henderson conceded she was mistaken and that amount paid was probably only $250. It was also apparent that her second payment was made to Daniels, as she claimed to have paid the Defendants at an office on Federal Street in Camden, on which Daniels had an office, but on which the Defendants never had an office. Ms. Schley, though conceding that the $700 figure recited on her certification form included payments to her attorney, was adamant in claiming that she paid $278, a sum verified only by a bank withdrawal receipt dated as of the date of her visit to the Defendants' business. However, her testimony became very confused about the total sum paid, and we are convinced that she was charged no more than the $250 maximum sum charged to most customers by the Defendant. Ms. Sapp stated that the $300 figure also recited on the certification form submitted by her and her husband

still "sticks in her mind" as being accurate, but she was not positive about this figure. We believe that she actually remitted only $250 to the Defendants.

On May 26, 1989, the Plaintiffs also filed a motion requesting us to amend our Recommendations and add several parties allegedly erroneously omitted from those on whose behalf an order had specifically been requested in their summary judgment motion. The parties agreed that testimony could also be taken on this motion at the hearing on May 30, 1989. The class members whom the Plaintiffs seek to add through this motion generally fit into one of the three following classifications: (1) Three parties who testified at the trial on liability on June 14, 1988, but who were not included, allegedly in error, and to whom only vague references were made, in the Plaintiffs' summary judgment motion, Hellena Heath, Barbara Higginbothem, and Evelyn Randall; (2) Four parties, named two paragraphs below, who testified at the May 30, 1989, trial regarding exigent circumstances that caused them to fail to supply a completed, executed certification form to the Plaintiffs' counsel by the March 31, 1989, bar date; and (3) A constantly growing number of individuals who likewise claim exigent circumstances caused them to not submit their respective certification forms until after the aforesaid bar date, but who failed to appear at the May 30, 1989, hearing and now endeavor to submit written certifications to the court, as opposed to testimony, explaining the circumstances which led to their failures to make timely submissions.

We have no hesitancy to recommend entry of judgments in favor of the three parties in the first group. Our review of the transcript of the June 14, 1988, hearing indicates that Ms. Heath paid $195 to the Defendants, while Ms. Higgenbothem and Ms. Randall each remitted $250. The Defendants had an opportunity to cross-examine these parties and their general credibility was unscathed. It appears that they were omitted from express inclusion in the summary judgment motion only through oversight by the Plaintiffs' counsel. Entry of judgments in the amount of $750 for each of the parties will be recommended.

Three of the four parties in the second grouping, David Andrews, Madeline Dawson, and Lucille Ross, provided very similar, believable stories. Each claimed that he or she had remitted a certification form to the Plaintiffs' counsel prior to March 31, 1989, but that the form was apparently not received or lost by the Plaintiffs' counsel, causing them to be unaware that no claim was received or filed on their behalf until they received a subsequent, post-bar-date follow-up letter sent to them by the Plaintiffs' counsel. Each of these parties claimed to have made a $250 payment, and we are prepared to amend our order to recommend judgments of $750 in their favor.

However, we refuse to render judgment in favor of the fourth, John Barnes. Mr. Barnes claimed to have belatedly received only the follow-up letter, due to his having moved from the address to which it was mailed. Our initial skepticism of this contention arose from the fact that the first mailing was addressed exactly like the second mailing, and Mr. Barnes received the second mailing within a week of its dispatch. While we appreciate that it is possible that one missive reached its intended destination while another did not, we also are obliged to acknowledge the rebuttable presumption that any letter mailed in the ordinary course will reach its destination. *See, e.g., Hagner v. United States*, 285 U.S. 427, 430, 52 S.Ct. 417, 418, 76 L.Ed. 861 (1932); *In re DSC Industries, Inc.*, 79 B.R. 244, 249 (Bankr.E.D.Pa.1987), *aff'd on this issue*, 94 B.R. 42, 45–46 (E.D.Pa.1988); and *In re Ryan*, 54 B.R. 105, 106–07 (Bankr.E.D.Pa.1985). The presumption was, in this case, not rebutted, because we disbelieve the accuracy of Mr. Barnes' assertion that he did not receive the initial mailing. We note that Mr. Barnes conceded at one point that he only "thinks" that the recent letter was his first notice. This uncertainty causes us to doubt that this is so. His testimony generally failed to inspire confidence in his reliability. We shall therefore recommend that Mr. Barnes' claim be denied.

We are also not prepared to recommend that parties who failed to appear at the May 30, 1989, hearing are entitled to any dispensation. That was the date which we had established for the final trial in this proceeding since January 17, 1989. The certifications presently filed by these parties cannot be viewed in the same light as certification forms submitted in support of a motion for summary judgment, as were those submitted with the Plaintiff's summary judgment motion on April 17, 1989. They are merely *ex parte*, extra-judicial statements in which these parties assert certain facts to attempt to convince us that we should consider their belated responses. As such, they are inadmissible hearsay declarations. *See In re Randbre Corp*, 66 B.R. 482, 486 (Bankr.S.D.N.Y.1986); and *In re Shangri–La Nursing Center, Inc.*, 31 B.R. 367, 370 (Bankr.E.D.N.Y.1983).

Procedurally, we fail to see how we could consider these remittances in the form that they are presented. The only possible means by which it appears to us that they conceivably could be presented now is as part of a motion to reopen the record in order that testimony in support of the facts alleged in these certifications could be adduced. *But see In re Pinto*, 89 B.R. 486, 502 (Bankr.E.D.Pa.1988), *modified*, 98 B.R. 200 (Bankr.E.D.Pa.1989); and 6A J. MOORE, FEDERAL PRACTICE, ¶ 59.04[13], at 59–36 to 59–37 (2d ed. 1988) (such motions are viewed with disfavor after a decision has been rendered). While some of the fact situations presented in these submissions appear more compelling than others, we believe that the time has come to let the curtain fall on this proceeding. It has now been pending for over six years. Any party unable to perfect a claim in that lengthy period is, in our mind, simply coming to us too late. No matter what deadline is established, there will always be some who fail to meet it. We are inclined to bring this case to a close by not encouraging any more submissions. Certainly we will not consider any such claims unless a proper procedural motion is presented to us.

We shall therefore recommend that relief be accorded to only the eleven additional class members referenced herein and denied as to all the rest.

---

DAVID A. SCHOLL
UNITED STATES BANKRUPTCY JUDGE
3722 United States Court House
Philadelphia, PA 19106–1763

Dated at Philadelphia, PA, this 21st day of June, 1989.