In re LILA, INC. t/a Becker & Associates and Rhino Copy, Debtors.

Mitchell W. MILLER, Trustee, Plaintiff,

v.

PRINTECH INSTANT ADS, INC., Defendant.

Bankruptcy No. 91–10059S.
Adv. No. 91–0845S.

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 15, 1991.

Camille Spinale, Ciardi, Fishbone & DiDonato, Philadelphia, Pa., for trustee.

Donald R. Visser, Visser & Bolhouse, Grandville, Mich., Gen. Counsel, Howard S. Klein, Philadelphia, Pa., Local Counsel, for defendant.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, Pa.

## ADJUDICATION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. FINDINGS OF FACT

1. The instant adversary proceeding is an accounts receivable action instituted by Mitchell W. Miller, Esquire, as Trustee ("the Trustee") for the Estate of LILA, INC. t/a BECKER & ASSOCIATES and RHINO COPY ("the Debtor") in this Chapter 7 bankruptcy case. The Trustee was appointed on January 15, 1991, after an expedited hearing on a successful involuntary petition brought against the Debtor. The Debtor was in the business of providing copy services and related services until its principals were discovered to have committed gross frauds against, *inter alia*, its secured lenders and employees in late December, 1991, at which time it was shut down by a federal court order.

2. This proceeding was filed on September 13, 1991, against PRINTECH INSTANT ADS, INC. ("the Defendant"), which is located in Grand Rapids, Michigan. The Answer to the Complaint was due on October 16, 1991, and the matter was listed for trial on November 5, 1991.

3. The Complaint averred that, on December 18, 1991, the Debtor had copied and bound 1,000 copies of a catalogue for the Defendant at an agreed price of $5,000,

$2,500 of which was paid prior to shipment of the catalogues. The balance of payment for the job, $2,500, was sought in damages.

4. After being granted an extension to file its Answer until October 25, 1991, on that date, the Defendant filed both a "Conditional Answer" to the Complaint ("the Answer") and a Motion to Abstain, Dismiss, and/or Change Venue of this proceeding to Michigan ("the Motion").

5. On November 1, 1991, we summarily denied the Motion. We explained that mandatory abstention under 28 U.S.C. § 1334(c)(2), invoked by the Motion, was patently unavailable, "as no prior state court action was pending." *See e.g., In re Container Transport, Inc.,* 86 B.R. 804, 806–07 (E.D.Pa.1988). We also rejected the contention that 28 U.S.C. § 1409(b) required transfer of venue of this proceeding to Michigan, because the Trustee was attempting to recover more than $1,000 ($2,500) in a non-consumer-debt case, irrespective of the Defendant's contention that a lesser sum was due and owing. We also found no basis for dismissal of this proceeding. We therefore directed that the trial proceed on November 5, 1991.

6. At trial, the Trustee, in very brief testimony, stated that the Debtor's books showed that the $2,500 balance was owing. However, he also admitted that he had no personal knowledge of the nature of the services performed by the Debtor or their quality.

7. The Defendant offered into evidence three depositions, in which the deponents were the two principals of the Defendant and the director of a company which had subcontracted the work in question to the Defendant. These depositions were taken by the Debtor's own counsel, in Michigan, on October 31, 1991, and November 1, 1991, after notice to the Trustee's counsel of the Defendant's intention to do so on October 25, 1991. The Trustee's counsel did not participate in the depositions.

8. In the depositions, all three witnesses testified that about twenty-five (25%) percent of the pages on each of the catalogues were bound upside down by the Debtor, rendering them worthless and causing the

Defendant's customer to refuse to pay the Defendant any of the sum of $9,000 otherwise due on the job. The Defendant's principals stated that attempts to communicate with the Debtor to get it to correct the defects were fruitless. This was hardly surprising, given the imminence of the Debtor's demise. The principals of the Defendant also produced copies of letters that had been sent to the Debtor on January 23, 1991, and the Trustee's counsel on March 25, 1991, asserting a refusal to pay the $2,500 balance because the catalogues in issue were improperly bound. No response was reported until the filing of this action.

## B. CONCLUSIONS OF LAW/DISCUSSION

1. In its Complaint, the Debtor did not allege whether this matter was a core or a non-core proceeding, as required by Bankruptcy Rule ("B.Rule") 7008(a), although it did request that this court determine this proceeding. In the Answer, the Defendant requested the court to enter judgment in its favor. It appears that both parties, by these pleadings, expressly consented that this court could determine this proceeding, even if it were non-core. *See* 28 U.S.C. § 157(c)(2); and B.Rule 7012(b).

We also note that this proceeding is properly classifiable as a "garden-variety" action by which the Debtor attempts to collect a liquidated pre-petition accounts receivable. Although there are some differences on the issue, we believe that such a proceeding may well be core. *See In re Windsor Communications Group, Inc.,* 67 B.R. 692 (Bankr.E.D.Pa.1986). *Accord, In re Leco Enterprises, Inc.,* 125 B.R. 385, 387–91 (S.D.N.Y.1991); and *In re Allegheny, Inc.,* 68 B.R. 183, 189–91 (Bankr. W.D.Pa.1986). *But see Beard v. Braunstein,* 914 F.2d 434, 443–45 (3d Cir.1990) (complex action seeking to recover pre-petition and post-petition accounts receivable is non-core).

Apparently with the agreement of the parties, we deem it appropriate that we determine this matter.

■ 2. The Trustee's counsel vigorously argued that this court should not consider the depositions, contending that the Defendant failed to give her the requisite "reasonable notice" of the depositions, especially given the fact that they were taken in a distant location.

■ This issue is controlled by B.Rule 7032, incorporating Federal Rule of Civil Procedure ("F.R.Civ.P.") 32(a)(3)(B), which provides as follows:

### RULE 32. USE OF DEPOSITIONS IN COURT PROCEEDINGS

(a) **Use of Depositions.** At the trial ... any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:

. . . . .

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: ... (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the United States, unless it appears that the absence of the witness was procured by the party proffering the deposition; ...

F.R.Civ.P. 32(a)(3)(B) thus permits a deposition to be used by any party for any purpose, which appears to include the deponent's using same for the deponent's own cause, as long as the deponent is located 100 miles from the place of holding trial and the deponent has not procured the absence of the witness. 4A J. MOORE, FEDERAL PRACTICE, ¶ 32.05, at 32–37 to 32–39 (2d ed. 1991).

■ Of course, *any* use of a deposition at trial is conditioned upon "reasonable notice" by the party seeking to use the deposition to the party against which the deposition is sought to be used. Generally, five days' notice of a deposition is deemed reasonable, although, in preliminary drafts of

F.R.Civ.P. 32 in the 1930's, one additional day was allowed for each 300 miles between the place of trial and the place of the deposition. 4A J. MOORE, *supra*, ¶ 30.-57[3], at 30–93. However, when circumstances demand, "shorter notice will suffice." *Id.* at 30–94.

Applying these principles to the instant proceeding causes us to conclude that the Defendant's proffered depositions can and should be made part of the record. The Trustee is properly choosing to utilize the convenience of nationwide service of process to prosecute a large number of accounts receivable claims of the Debtor in this forum, even though it is obviously quite inconvenient for customers located some distance from this jurisdiction, as is the Defendant, to attend trial here. However, unless an amount less than $1,000 is at issue, 28 U.S.C. § 1409(b), the Trustee can properly bring such actions in this court, and distant parties defending such actions will rarely be able to succeed in having the venue changed pursuant to 28 U.S.C. § 1412. *See In re American Int'l Airways, Inc.*, 66 B.R. 642, 644–45 (Bankr. E.D.Pa.1986). It is therefore only fair that, in a case where the amount at issue may not exceed the cost of travel, a defendant should be provided *some* relatively inexpensive means for presenting a just defense in an action instituted by the Trustee in this court.

The use of depositions is one of the few means available to distant defendants, the other being the rather cumbersome alternative of requesting this court to conduct the trial by telephone. Since the Defendant here is located well in excess of 100 miles from this court, it can hardly be said to have procured its witnesses' absence from the trial by not appearing. *See* 4A J. MOORE, *supra*, ¶ 32.05, at 32–37 to 32–39. We seriously doubt whether any litigant would choose to present a case by deposition if other alternatives were practical. When so proceeding, the testimony of a witness is "frozen" in the record and cannot, like the testimony of a live witness, be tailored to meet unexpected adverse testimony. *See id.* at 32–40, quoting *Rich-*

*mond v. Brooks,* 227 F.2d 490, 492 (2d Cir.1955) (the party using deposition testimony bears a "tactical burden").

Under the instant circumstances, we find that the Defendant's notice of the depositions to the Trustee was "reasonable." The depositions were scheduled the same day as both the Defendant's Motion and the Answer were due and filed. The trial was at that time but 12 days away. Only one or two business days intervened between the dates chosen for the depositions and the trial. The Defendant therefore had very little practical opportunity to provide better notice to the Trustee's counsel. The Defendant is to be commended for filing an Answer and preparing promptly for trial despite having filed the Motion, thus indicating a proper concern with presenting this matter to us on the merits. *Compare American Int'l Airways, supra,* 66 B.R. at 645–46.

The five-day benchmark seems realistic, despite the distance between the location of the trial and the location of the depositions in issue. Since the 1930's, improvements in speed of travel and alternative means for communications made participation by the Trustee's counsel possible had she extended herself to do so. Such improvements in travel and communications render the allowance of an extra day for every 300 miles of distance between the deposition and the trial a somewhat archaic benchmark. At the disposal of the Trustee, in addition to live participation at the depositions, was the ability to participate in the depositions by telephone, or to request a continuance of the trial. A continuance was likely to have been granted, since November 5, 1991, was the first listing of the proceeding for trial.

We have a distinct preference for deciding matters on their merits, in proceedings in which each party has an equal opportunity to present *bona fide* claims and defenses. The deposition-procedure utilized by the Defendant was one of the few devices available to allow it to present its defense on the merits. We are disinclined to punish such legitimate advocacy. We are also loath to reward the Trustee with a judg-

ment in the face of convincing evidence against his cause by rejecting this evidence through a procedural ruling.

Therefore, we will admit the depositions into the instant record.

█ 3. In the face of these depositions, we easily conclude the Trustee has failed to prove his right to recovery from the Defendant of the $2,500 balance allegedly due to the Debtor by a preponderance of the evidence. The Trustee could present no evidence of the condition of the work performed by the Debtor, despite being on notice that this was the nature of the defense. The Defendant's evidence of the Debtor's substantial breaches of its implied warranty of merchantability and its warranty of fitness for a particular purpose in performing the work in issue clearly supported a defense to this proceeding. *See* 13 Pa.C.S. §§ 2314, 2315; and *In re Repco Products Corp.,* 100 B.R. 184, 195–96 (Bankr.E.D.Pa.), *aff'd,* C.A. No. 89–5514 (E.D.Pa. Sept. 8, 1989). It is doubtful that even the $2,500 paid by the Defendant to the Debtor was justifiable compensation for the defective work done. Of course, any claims of overpayment by the Defendant against the Debtor must be relegated to the claims process in this court. *See Repco Products, supra,* 100 B.R. at 202; and *In re Clark,* 91 B.R. 324, 342 (Bankr. E.D.Pa.1988).

### C. ORDER

AND NOW, this 15th day of November, 1991, after a trial of this proceeding on November 5, 1991, and upon careful consideration of the record of the trial, including the Defendant's testimonial evidence proffered by depositions, which we deem admissible, it is hereby

ORDERED AND DECREED that judgment is entered in favor of the Defendant PRINTECH INSTANT ADS, INC. and against the Plaintiff–Trustee, MITCHELL W. MILLER, ESQUIRE. Accordingly, the Trustee's Complaint is DISMISSED.