In re TRE SCALINI, INC., Debtor.

Richard M. KIPPERMAN, Chapter
7 Trustee, Plaintiff,

v.

KIDDER PEABODY & CO., Defendant.

Bankruptcy No. LA 91–66552–SB.
Adv. No. AD 93–01863–SB.

United States Bankruptcy Court,
C.D. California.

Feb. 9, 1995.

Victor A. Vilaplana, Alan Van Derhoff, Sheppard, Mullin, Richter & Hampton, San Diego, CA, for debtor.

Douglas G. Boven, Eric G. Wallis, Crosby, Heafey, Roach & May, Oakland, CA, for Kidder Peabody & Co.

## ORDER RE TERMINATION
## OF ARBITRATION

SAMUEL L. BUFFORD, Bankruptcy
Judge.

## I. INTRODUCTION

This adversary proceeding involves a failed
arbitration attempt arising out of a dispute
concerning the debtor's purchase of securi-
ties. After more than 18 months since the
entry of an order for arbitration, the parties
have failed to begin their arbitration hearing.
Consequently, the Court vacates the order
referring this matter for arbitration and or-
ders that the adversary proceeding, together
with the related objection to claim, proceed
to summary judgment and trial in this Court,
on the grounds that the parties are in default
in proceeding with arbitration.

## II. FACTS

The Trustee filed this adversary proceed-
ing against Kidder Peabody & Co. ("Kidder")
on March 1, 1993. He seeks damages
against Kidder for inducing the debtor to
purchase on margin some 250,000 shares of
stock in Pacific Southwest Corp. ("PSC"),
when PSC stock was not eligible for margin
treatment. PSC is the debtor's parent cor-
poration, and its stock was publicly traded in
the NASDAQ market. Kidder was one of
the market makers for this stock.

The trustee further alleges that within ten
days after the purchase Kidder discovered
the problem and notified the debtor that the
stock did not qualify for margin treatment.
Kidder set a deadline 33 days later for the
debtor to pay for the stock in full, or the
stock would be sold.. When the debtor was
unable to pay approximately $1 million more
for the full price of the stock, Kidder sold the
stock.[1] In the interim, the trustee claims
that the market price of PSC stock fell from
approximately $9.00 per share to approxi-
mately $2.00 per share, and the debtor suf-
fered a loss exceeding $4 million. The debt-

or has never paid the additional funds, and
Kidder has filed a claim in an amount now
stipulated at approximately $2,250,000.

The underlying stock brokerage agree-
ment between Tre Scalini and Kidder provid-
ed for arbitration of any claims against Kid-
der. Its relevant language is as follows:

ANY CONTROVERSY BETWEEN US
... ARISING OUT OF OR RELATING
IN ANY WAY TO ANY ACCOUNTS OR
TRANSACTIONS WITH OR FOR ME
OR TO THIS OR ANY OTHER AGREE-
MENT BETWEEN US SHALL BE SET-
TLED BY ARBITRATION. ANY ARBI-
TRATION BETWEEN US SHALL BE
CONDUCTED IN ACCORDANCE
WITH THE RULES THEN IN EFFECT
OF THE NASD OR OF ANY EX-
CHANGE OF WHICH YOU ARE A
MEMBER, AS I MAY ELECT.... THE
AWARD OF THE ARBITRATORS, OR A
MAJORITY OF THEM, SHALL BE FI-
NAL, AND JUDGMENT UPON THE
AWARD RENDERED MAY BE EN-
TERED IN ANY COURT HAVING JUR-
ISDICTION THEREOF.

(emphasis in original). Pursuant to this
agreement, Kidder demanded that the trust-
ee proceed to arbitration on the trustee's
claim, and the trustee stipulated to an order
entered on July 26, 1993[2] referring this ad-
versary proceeding for arbitration.

However, more than 18 months later the
arbitration has still not begun. The arbitra-
tion is estimated to last three days, and the
first two days of hearings have finally been
scheduled on March 16–17, 1995. No further
hearing date has been scheduled, according
to the evidence before the Court, and there is
no evidence that it will be scheduled in the
foreseeable future.

## III. ARBITRATION IN BANKRUPTCY
## CASES

■ The Federal Arbitration Act requires
federal courts to enforce valid arbitration

---

1. In fact, according to the trustee's allegations,
Kidder began selling the stock before the 33 days
had expired. Apparently the debtor had in-
formed Kidder before that date that it would not
pay Kidder the remainder of the purchase price
within that time frame.

2. The bankruptcy case was filed as a chapter 11
case on March 1, 1991, and converted to chapter
7 on July 18, 1991. The trustee filed this adver-
sary proceeding on March 1, 1993.

agreements in commercial contracts, and severely restricts the grounds for vacating or modifying arbitration awards. Section 2 provides:

A written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C.A. § 2 (West 1970). Section 3 further provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C.A. § 3 (1970).

In enacting the Federal Arbitration Act in 1925, Congress declared that federal policy favors arbitration where the parties have agreed to it. *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984).

In the past the applicability of this provision in a bankruptcy case has generally been questioned. *See, e.g., Zimmerman v. Continental Airlines*, 712 F.2d 55 (3d Cir.1983) (granting of a stay pending arbitration is within the sound discretion of the trial court, because the underlying purposes of the Bankruptcy Code impliedly modify the Federal Arbitration Act). The recent trend, however, has been to enforce arbitration clauses in bankruptcy cases. *See, e.g., Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith*, 885 F.2d 1149 (3d Cir.1989) (reversing *Zimmerman*); Fred Neufeld, *Enforcement*

*of Contractual Arbitration Agreements Under the Bankruptcy Code*, 65 Am.Bankr.L.J. 525 (1991). Indeed, this is the law in this circuit. *Graham Oil Co. v. Arco Products Co.*, 43 F.3d 1244, 1247 (9th Cir.1994); *MCI Telecommunications Corp. v. Gurga (In re Gurga)*, 176 B.R. 196, 197 (9th Cir. BAP 1994) (reversing bankruptcy court's denial of stay pending arbitration of dispute concerning charges for use of 900 telephone numbers).[3]

Pursuant to the foregoing legislative policy, the Court approved the stipulation for stay of this adversary proceeding pending arbitration.

## IV. TIME LIMITATIONS ON ARBITRATION

### A. Delay by the Parties

The Court finds that the parties have delayed far more than a reasonable time in proceeding with the arbitration. It is now more than 18 months since the Court signed the arbitration order, the arbitration has not yet begun, and there is no evidence that it will be completed in the foreseeable future. Two days of arbitration hearings are scheduled, and no further arbitration hearings have been set. In contrast, if the adversary proceeding had proceeded in this Court, in the Court's judgment, it would have been completed before the end of 1993. The parties have offered no explanation for their failure to proceed promptly with arbitration.

What is a reasonable time to complete an arbitration varies with the work load and calendar of a court. It also depends on the kind of case that is involved. This adversary proceeding arises in a bankruptcy case. The national median time from filing to closing of a chapter 7 case is 5.1 months. The pendency of an adversary proceeding stands in the way of closing a case. This dispute stands in the way of the trustee's filing his final report and fee application, after approval of which the trustee can distribute the estate assets to its creditors.

---

**3.** *But see Graham Oil, supra* (invalidating arbitration clause that abrogated specific statutory provisions authorizing exemplary damages and recovery of attorneys fees, and requiring arbitration within shorter time period than statute of limitations).

The Court put the parties on notice at its status conference on the trustee's objection to the claim on December 13, 1994 that their indefinite delay would not be tolerated. There was time even between then and now to complete the arbitration, if the parties had chosen to proceed promptly. However, it appears that even after that hearing they did absolutely nothing to expedite the arbitration, and instead chose to continue in their languid ways.

Arbitration is intended to provide a prompt alternative to litigation. According to the United States Supreme Court, "the unmistakably clear congressional purpose [of the arbitration statute is] that the arbitration procedure, when selected by the parties to a contract, be *speedy* and not subject to delay and obstruction...." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967) (emphasis added). However, in this case the reference to arbitration has resulted solely in inordinate delay.

■ In the bankruptcy context, the Court holds that a six-month time frame is presumptively the appropriate timing for completing an arbitration pursuant to an arbitration agreement. If an arbitration is not completed in that time, the Court has the discretion to vacate the stay pending arbitration.

■ Section 3 of the Federal Arbitration Act expressly provides that a stay pending arbitration is subject to the condition that, "the applicant for the stay is not in default in proceeding with such arbitration." In this adversary proceeding both parties were applicants for the stay, pursuant to their stipulation for arbitration.

The Court finds that both parties are in default in proceeding with the arbitration, in consequence of the egregiously long and unexcused delay in commencing or completing the arbitration, which substantially exceeds six months. As a result, the stay pending arbitration is no longer mandated by § 3. Furthermore, the Court finds that any further stay is inadvisable, because it will delay the payment of creditors in this case, and will delay the completion and closing of the case.

## B. Delay by NASD

The parties have failed to explain the reason that this adversary proceeding has been delayed for such a long period of time, and it appears that they are responsible for the delay. However, it also appears possible that the NASD is responsible for the delay, for failure to make an arbitrator available for the three days that the arbitration is projected to take. The NASD has not appeared to present its version of what has happened.

Even now, apparently no arbitrator has been provided who can devote three days for the arbitration, and the parties are unable to assure the completion of the arbitration within the foreseeable future. The Court finds that, if the NASD is responsible for the delay, this also requires that the arbitration order be vacated.

■ If the delay is the responsibility of the NASD, the Court holds that the arbitration provision is unenforceable. A provision for arbitration before XYZ Association is not effective, if XYZ Association does not exist. Similarly, a provision providing for arbitration before an association that fails to undertake the arbitration within a reasonable period of time cannot be enforced, at least in a bankruptcy court. The United States Supreme Court has stated that arbitration is intended to be "speedy and not subject to delay and obstruction". *Prima Paint, supra; accord, Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985) ("[arbitration] trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and *expedition* of arbitration" (emphasis added)).

Any arbitration organization that does not provide for the speedy resolution of disputes fails to provide effective arbitration.[4] There are a number of arbitration organizations that are ready to provide such speedy resolu-

---

4. Apparently the NASD has recently had difficulty in handling the number of arbitrations that it has been requested to handle. *See* Margaret A. Jacobs & Michael Siconolfi, *Investors Fare Poorly Fighting Wall Street—And May Do Worse*, The Wall St. J., Feb. 8, 1995, at A1, A9.

tion of disputes: the Court is not required to tolerate one that is not.

 The Court holds alternatively that any arbitration organization that is not prepared to complete an arbitration within six months of the filing of a complaint in a bankruptcy case presumptively does not meet the requirement for speedy resolution of disputes. The Court further holds that the practical availability of such speedy resolution is a condition for upholding the application of an arbitration provision. For any arbitration in a bankruptcy case that is not completed within six months, the Court has the discretion (if not the obligation) to terminate the stay pending arbitration and to proceed to resolve the dispute.

Only in this manner can the Court regain control of the timing of the resolution of a dispute that otherwise may delay, for a lengthy and indefinite period of time, the orderly completion of a bankruptcy case.

### C. Summary Judgment

 There is a further reason for vacating the arbitration stipulation in this adversary proceeding. It appears to the Court that this dispute may not turn on contested issues of fact, as to which the Court is required to hear testimony. Instead (as is typical in business disputes), it appears that the dispute may turn on the resolution of issues of law based on undisputed facts. Summary judgment is the procedure provided in the Federal Rules of Civil Procedure for the resolution of such disputes. The parties have provided no evidence that a similar procedure is available in the arbitration setting.

The availability of summary judgment proceedings in this Court provides an addition reason for not tolerating the extreme delay of the parties in proceeding with arbitration.

### V. CONCLUSION

In summary, the Court finds that the parties have delayed the arbitration of the dispute in this adversary proceeding to an egre-gious extent. They are thus in default in proceeding with arbitration. In consequence, the Court vacates its stay pending arbitration, and sets the dispute for a summary judgment hearing, pretrial and trial before the end of next month.

Accordingly, the Court sets a hearing on March 7, 1995 at 2:00 p.m. on summary judgment and pretrial in this adversary proceeding. Kidder is ordered to file a summary judgment motion by February 14, 1995, pursuant to local summary judgment procedures. The parties shall complete their discovery before the hearing. The Court also sets trial on March 27, 1995 at 10:00 a.m. before Judge Ross[5] on any matters in the adversary proceeding and the objection to claim that are not resolved at the summary judgment hearing.[6]

---

**5.** The Honorable Herbert A. Ross, Chief Bankruptcy Judge, District of Alaska, sitting by assignment in the Central District of California.

**6.** At the summary judgment hearing the Court awarded summary judgment to Kidder.