**In re SACRED HEART HOSPITAL OF NORRISTOWN, Debtor.**

**SACRED HEART HOSPITAL OF NORRISTOWN, Plaintiff,**

and

**The Official Committee of Unsecured Creditors of Sacred Heart Hospital of Norristown, Intervening Plaintiff,**

v.

**INDEPENDENCE BLUE CROSS, Defendant.**

**Bankruptcy No. 94–13275DAS.
Adv. No. 95–0035DAS.**

United States Bankruptcy Court, E.D. Pennsylvania.

April 19, 1995.

Vincent J. Marriott, III, Matthew M. Strickler, Ballard Spahr Andrews & Ingersoll, Philadelphia, PA, special counsel for debtor.

Eric Kraeutler, Morgan, Lewis & Bockius, Philadelphia, PA, for defendant.

Neal D. Colton, Dechert Price & Rhoads, Philadelphia, PA, for Creditors' Committee.

Robert Lapowsky, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, PA, for AllMed Financial Corp.

John J. Koresko, Koresko & Noonan, Norristown, PA, for certain former employees of debtor.

Claudia Z. Springer, Duane Morris & Heckscher, Philadelphia, PA, for Mun. Bonds Investors Ins. Co.

J. Gregg Miller, Pepper, Hamilton & Sheetz, Philadelphia, PA, for Midlantic Bank.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, PA.

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

Presently before the court are two motions arising out of the above-captioned adversary proceeding. The first is the motion of the Plaintiff/Debtor, SACRED HEART HOSPITAL OF NORRISTOWN ("the Debtor"), for summary judgment in its favor on the claims it brought against INDEPENDENCE BLUE CROSS, ("IBC"), the Defendant ("the S/J Motion"). In the Complaint, the Debtor essentially seeks a determination that it is

entitled to an upward adjustment in the amount of capital cost reimbursements that it was previously paid by IBC under each of the Hospital Agreements between the parties that were in effect prior to July 1, 1992. The Debtor claims that adjustments are mandated by the prior Hospital Agreements and have become due as a result of the loss it realized upon the sale of its hospital in the course of this bankruptcy case.

The second is a Motion of IBC for a determination that the instant proceeding is non-core; a request that the proceeding be stayed pending arbitration pursuant to the arbitration clause in the 1992 Hospital Agreement; or, as a secondary alternative, that the Complaint be dismissed with prejudice for failing to state a claim upon which relief can be granted under Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 7012(b), incorporating Federal Rule of Civil Procedure ("F.R.Civ.P.") 12(b)(6) (the Stay/Dismissal Motion or "the S/D Motion").

At the outset, we note our reluctance to either grant the S/J Motion or dismiss the proceeding pursuant to the S/D Motion. We are then left with either relegating the disposition of the merits to a jury trial in the District Court, or arbitration. Given this alternative, we exercise our discretion to initially allow arbitration to take place for a discrete four-month period, after which we will monitor the arbitration process and may reconsider this referral. In making this disposition, we need not decide whether this proceeding is core, although we would be inclined to characterize it as core, nor make any definitive pronouncements on the merits.

## B. FACTUAL AND PROCEDURAL HISTORY

Prior to commencing its bankruptcy case, the Debtor operated an acute-care non-profit hospital facility ("the Hospital") located in Norristown, Pennsylvania. On May 25, 1994, approximately one week after ceasing operations at the Hospital, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this court.

As we previously observed in two prior Opinions of this court arising from this case, reported at 177 B.R. 16, 18–19 (1995) (motion of ex-employees to file a class proof of claim denied); and 175 B.R. 543, 546–48 (1994) (home health care service provider denied an assertion of an alleged trust against certain accounts receivable), the Debtor's Chapter 11 case has been in a liquidation mode from its inception. In furtherance of the liquidation process, the Debtor, in October, 1994, sold the Hospital, its principal asset, to Montgomery County for what was, at that time, a surprisingly high bid of $7.05 million, as the result of an auction sale conducted under the supervision of this court. It is this sale or, more appropriately, certain alleged ramifications of this sale, which underlie the Debtor's claims in this proceeding. We should also note that a hearing to consider confirmation of the Debtor's Amended Plan of Reorganization was conducted on April 12, 1995. Objections of a single dissenting creditor, AllMed Financial Corporation, are to be addressed in Briefs to be filed by May 10, 1995.

In the Complaint in this proceeding, filed on January 24, 1995, the Debtor alleged that, despite the attractiveness of the sale price at that time, it experienced a book loss in the approximate amount of $12 million on the sale of the Hospital, because the Hospital's value was listed on its books as $19 million. Further, the Debtor alleged that the capital cost reimbursements which were previously paid to it by IBC under each of the prior Hospital Agreements must be adjusted, according to the terms of those agreements, to take into account the loss realized by it in the sale. More specifically, the Debtor asserted that, as a result of the 1994 sale of the Hospital, it was entitled to payment of additional capital cost reimbursements for each of the years that the Agreements were in effect.

On February 15, 1995, the Debtor filed a Motion to bifurcate the trial of this proceeding ("the Bifurcation Motion"). On that same date, the Official Committee of Unsecured Creditors of the Debtor ("the Committee") filed a motion to intervene in this proceeding. On February 23, 1995, after an expedited hearing on the Bifurcation Motion, as requested by the Debtor, and after a colloquy with the parties, we issued an Interim Order directing the Debtor to file and serve a planned motion for summary judge-

ment on its claims, and directing IBC to file a similarly-planned motion to dismiss the Complaint, on or before March 3, 1995. Per this Order and a later extension, the parties were given until March 22, 1995, to file appropriate supporting and responsive briefs relevant to the anticipated Motions.

By Order entered on February 24, 1995, the court granted the Committee's motion to intervene. *See Phar–Mor, Inc. v. Coopers & Lybrand,* 22 F.3d 1228 (3d Cir.1994) (creditors' committee can intervene in either a core or non-core proceeding as of right). We also scheduled a status hearing on this proceeding for April 5, 1995. By our Order dated March 28, 1995, the parties were informed that we would entertain oral argument on the pending Motions at this status hearing.

On February 17, 1995, IBC filed a Motion seeking withdrawal of the reference of this proceeding to this Bankruptcy Court. IBC's motion is pending in the District Court. On February 24, 1995, we denied IBC's request for a stay of further proceedings pending a decision of the District Court on the withdrawal of reference motion. *See, e.g., Business Communications, Inc. v. Freeman,* 129 B.R. 165, 166 (N.D.Ill.1991); *In re Adelphi Institute, Inc.,* 112 B.R. 534, 538 (S.D.N.Y. 1990); and *City Fire Equipment Co. v. Ansul Fire Protection Wormald U.S., Inc.,* 125 B.R. 645, 649–50 (N.D.Ala.1989) (en banc) (bankruptcy courts should supervise a bankruptcy proceeding in which a jury trial is demanded until the time of trial). At the argument on April 5, 1995, the parties informed the court that the withdrawal of reference motion had been scheduled for a hearing before the Honorable J. William Ditter, Jr., of the District Court, on April 26, 1995.

The S/J Motion and the S/D Motion were filed and briefed by March 22, 1995. On March 3, 1995, IBC also made a formal demand for a jury trial. In the course of the argument on April 5, 1995, we indicated our probable intention to refer the substantive matters in issue to arbitration. The Debtor countered by contending that the arbitration process was likely to be complicated by the intervention of other medical services providers who would wish to resolve similar issues in the context of this same arbitration process.

Despite failing to request or obtain permission to present any further briefs, the Debtor saw fit to submit a lengthy letter-brief to the court dated April 6, 1995, arguing that the absence of material disputed facts justified our granting the S/J Motion. IBC, while pointing out the impropriety of this submission, also presented a short letter-brief of April 11, 1995, containing a substantive reply. We were obliged to point out to the parties, for reasons which are exemplified by the disorder in the submission process effected by these letters, that such submissions were inappropriate, *see In re Jungkurth,* 74 B.R. 323, 325–26 (Bankr.E.D.Pa.1987), *aff'd sub nom. Jungkurth v. Eastern Financial Services, Inc.,* 87 B.R. 333 (1988), and that any further like submissions would be met with sanctions.

## C. DISCUSSION

1. *TESTIMONY REGARDING THE PARTIES' INTENTIONS AND ASSUMPTIONS IN REFERENCE TO THE DEBTOR'S RIGHTS UNDER THEIR SUCCESSIVE HOSPITAL CONTRACTS IS NECESSARY TO RESOLVE THE SUBSTANTIVE ISSUES PRESENTED IN THIS PROCEEDING, PRECLUDING THE ENTRY OF SUMMARY JUDGMENT IN FAVOR OF THE DEBTOR OR DISMISSAL OF THE COMPLAINT IN THIS PROCEEDING AT THIS JUNCTURE.*

Summary judgment is a procedure established to permit prompt disposition of actions in which there is no genuine issue of material fact. *See, e.g., In re Summit Airlines, Inc.,* 160 B.R. 911, 916 (Bankr.E.D.Pa.1993). Pursuant to F.R.Civ.P. 56(c), applicable here pursuant to F.R.B.P. 7056, summary judgment is proper only when the record before the court, including any relevant "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits," shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.*

On a motion for summary judgment, the court's role is to determine "whether there is a genuine issue [of fact to be determined at] trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In this regard, only facts which may affect the outcome of the case are considered "material." *Id.* at 255, 106 S.Ct. at 2514. The moving party has the initial burden of demonstrating the absence of any genuine issues of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Additionally, the evidence in the record is to be viewed in the light most favorable to the non-moving party. *Continental Ins. Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982). However, if the nonmoving party fails to adduce sufficient evidence in connection with an essential element of the case for which it bears the burden of proof at trial, then the moving party is entitled to judgment in its favor as a matter of law. *See, e.g., Celotex, supra*, 477 U.S. at 322, 106 S.Ct. at 2552; *J.F. Feeser, Inc. v. Serv-a-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991); and *In re After Six, Inc.*, 1995 WL 108209, slip op. at *3–*4 (Bankr.E.D.Pa. March 7, 1995).

In the matter *sub judice*, the Debtor contends that each of the Hospital Agreements in effect from 1971 through June 30, 1992 (collectively the "Prior Agreements"), required IBC to reimburse it for the "reasonable cost" of treatment for IBC subscribers and included a component for the depreciation of capital assets used in providing patient care. The Debtor further asserts that the Prior Agreements provided for adjustment to be made to the reimbursable capital costs paid in prior years to take into account the gain or loss realized upon the sale of depreciable assets in a subsequent period. The Debtor adds that, while the Agreements in effect prior to 1982 referenced Medicare principles as a part of the general terms of reimbursement, the Agreements in effect between 1982 and June 30, 1992, specifically provided for an adjustment in costs in the same manner as provided by the Medicare program. In this regard, the Debtor cites 42 C.F.R. § 413.134(f)(1) and (3), which in pertinent part state as follows:

(1) *General.* Depreciable assets may be disposed of through sale, scrapping, trade-in, exchange, demolition, abandonment, condemnation, fire, theft, or other casualty. If disposal of a depreciable asset results in a gain or loss, an adjustment is necessary in the providers allowable cost.... The treatment of the gain or loss depends upon the manner of disposition of the asset, as specified in paragraphs (f)(2) through (6) of this section.... The gain or loss ... has no retroactive effect on a proprietary provider's equity capital for years prior to the year of disposition.

. . . . .

(3) *Sale within 1 year after termination.* Gains and losses realized from a bona fide sale of depreciable assets within 1 year immediately following the date on which the provider terminates participation in the Medicare program are also included in the determination of allowable cost, in accordance with the procedure specified in paragraph (f)(2) of this section.

The Debtor argues that, since it is undisputed that it sold the Hospital in October 1994, within one year after it terminated participation in the Medicare program, the depreciation loss it experienced as a result of the sale must be included in the determination of allowable costs payable by IBC for the services that the Debtor provided to IBC subscribers under each of the Prior Agreements. Accordingly, the Debtor contends that it is entitled to have the amounts previously paid under the Prior Agreements adjusted, in accordance with Medicare principles, to include additional depreciation expenses which it alleges became due only after the sale of the Hospital in 1994.

We must therefore consider whether IBC has successfully demonstrated the existence of any questions of material fact which would preclude summary disposition of the matter in favor of the Debtor. *See Summit Airlines, supra*, 160 B.R. at 917. In fulfilling this obligation, IBC must do more than simply show that there is some "metaphysical doubt" as to the material facts. *In re H.R. Hindle & Co., Inc.*, 149 B.R. 775, 783 (Bankr. E.D.Pa.1993), citing *Mashushita Electric In-*

*dustrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The court concludes that IBC has met this burden.

In response to the Debtor's Motion, IBC posits that, at the time that the sale of the Hospital took place, the Agreements pursuant to which the Debtor asserts its claim had been superseded by a new Hospital Agreement which took effect on or about July 1, 1992. For example, the 1990 Hospital Agreement provides, in pertinent part, that "[t]his Agreement shall commence on July 1, 1992 and shall continue in effect for three (3) years thereafter until June 30, 1995." As noted by IBC, compensation under the 1992 Agreement was to be paid on a "Prospective Per Diem or Per Charge Basis, and that Outpatient Covered Services [were to] be paid on a Prospective Percentage of Charges basis," as described in Exhibit A to the 1992 Agreement. IBC points out that the 1992 Agreement did not provide for compensation based on the reasonable cost reimbursement principles of the Prior Agreements or the Medicare program.

■ The dichotomy between the Debtor's claims and the terms of the 1992 Agreement raises questions of material fact as to whether, in entering into the 1992 Agreement, IBC intended to continue to be responsible for any outstanding obligations to the Debtor arising under the Prior Agreements. The highly subjective, fact specific nature of any "intent inquiry" makes the resolution of such a question particularly unsuitable for determination on a motion for summary judgment. *See, e.g., Pine Top Ins. Co. v. Bank of America Nat'l Trust & Savings Ass'n*, 969 F.2d 321, 352 (7th Cir.1992); and *In re Kelley*, 151 B.R. 790, 791 (Bankr.S.D.Tex.1992).

The role of the court on a motion for summary judgment is not to weigh the evidence and determine the truth of the matters presented, but merely to determine whether there exists any genuine factual issues which must be tried. In light of the overriding significance of the parties' intentions in entering into this series of contracts, we find that the issues raised cannot properly be resolved in the context of the S/J Motion.

Accordingly, the court must deny the S/J Motion.

As a second alternative to its request that the parties' dispute must be submitted to arbitration, IBC argues that this matter may be resolved substantively in *its* favor by our granting the motion to dismiss prong of its S/D Motion.

However, relative to even the burden of a party seeking the entry of summary judgment in its favor, the burden on a party seeking dismissal pursuant to F.R.Civ.P. 12(b)(6) is rigorous. It is black-letter law that a motion to dismiss " 'is viewed with disfavor and is rarely granted' and that such relief is 'to be granted only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.' " *In re Nutri/System, Inc.*, 1994 WL 96963, slip op. at *2 (Bankr.E.D.Pa. March 23, 1994), quoting 5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE, § 1357, at 598, 604 (1969). *See also, e.g., In re TM Carlton House Partners, Ltd.*, 110 B.R. 185, 187 (Bankr.E.D.Pa.1990); and *In re Dinkins*, 79 B.R. 253, 257 (Bankr. E.D.Pa.1987).

■ The Third Circuit Court of Appeals has stated that, when considering a F.R.Civ.P. 12(b)(6) motion, a court must accept all allegations in the complaint, and all reasonable inferences that can be drawn therefrom, as true, and view them in the light most favorable to the non-moving party. *See Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989); and *Angelastro v. Prudential–Bache Securities, Inc.*, 764 F.2d 939, 944 (3d Cir.), *cert. denied*, 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985). A complaint should not be dismissed for failing to state claim unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of a claim that would entitle the plaintiff to relief. *See City of Philadelphia v. Lead Industries Ass'n*, 994 F.2d 112 (3d Cir.1993), citing *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The strongest argument levelled by IBC in favor of a summary disposition in its favor is based upon § 22.8 of the 1992 Hospital

Agreement, the so-called "integration clause," which states as follows:

22.8 *Entire Agreement*

This Agreement and amendments thereto, as added from time to time pursuant to the terms of this Agreement, constitute the entire understanding and agreement of the parties hereto and supersedes any prior written or oral agreement pertaining to the subject matter hereof.

In certain contexts, it has been held that the presence of a provision such as the foregoing signifies the parties' intention that the writing containing that provision is the final embodiment of the parties' agreement. *See, e.g., Caplan v. Oxford Finance Cos., Inc.,* 1988 WL 111995 (E.D.Pa. Oct. 21, 1988). Also noted by IBC in this regard is the general principle that, where a written contract is unambiguous on its face, the agreement " 'must be held to express all of the negotiations, conversations and agreements made prior to its execution and neither oral testimony, ... nor prior written agreements, ... or other writings are admissible to explain or vary the terms of the contract.' " *Synthes (U.S.A.) v. Shimer,* 1994 WL 361382 (E.D.Pa. July 12, 1994), quoting *McGuire v. Schneider, Inc.,* 368 Pa.Super. 344, 349, 534 A.2d 115, 117–18 (1987). Thus, IBC argues, by force of a rule of substantive law, *e.g.,* the parol evidence rule, the parties are precluded from even arguing that any other terms not consistent with those found in the 1992 Hospital Agreement are valid. *See, id.; Caplan, supra,* slip op. at \*1; *Beckman v. Vassall–Dillworth Lincoln–Mercury, Inc.,* 321 Pa.Super. 428, 438, 468 A.2d 784, 789 (1983); and *Pisiechko v. Diaddorio,* 230 Pa.Super. 295, 326 A.2d 608 (1974).

 The foregoing notwithstanding, however, we find that the Debtor has alleged facts which, if true, might at least establish that the parties had engaged in a course of conduct under the 1992 Hospital Agreement pursuant to which IBC continued to recognize certain payment obligations to the Debtor for services rendered to IBC subscribers prior to the 1992 Agreement. In particular, the Debtor alleges that IBC continued to require it to file cost reports for prior years, and has audited its reports for prior years.

IBC admitted that it had not completed its review of the Debtor's cost reports for the period ending June, 1992. This course of conduct, if proven, would possibly provide an inroad for the Debtor to establish that IBC has at least some continuing liability for the reimbursement of reasonable cost expenses relating to those services under the 1992 Agreement. Given this possibility, IBC has failed to demonstrate that the Debtor can prove no set of facts that would entitle it to judgment in its favor. Accordingly, the motion to dismiss must be denied, and we are compelled to conclude that testimony regarding the parties' intentions and assumptions regarding the Debtor's rights under all contracts in the series of Agreements between the parties is necessary to resolve their dispute.

Thus, this court cannot decide the parties' disputes on the basis of either party's substantive dispositive motion. To finally decide this proceeding, reach this end, a factual hearing will be necessary in some forum. Since it appears unlikely that this court could represent that forum, *see* pages 203–04 *infra,* we are faced with the choice of sending the parties to the District Court for a jury trial or to arbitration to resolve this matter. It is not a difficult choice to conclude that, initially at least, the parties should be relegated to the potentially swifter and cheaper alternative of arbitration.

2. *THE STRONG FEDERAL POLICY FAVORING ARBITRATION OF DISPUTES WHERE SAME IS CONTRACTUALLY AGREED UPON SHOULD PREVAIL HERE, AT LEAST ON A TEMPORARY BASIS, IN LIGHT OF OUR DOUBTS AS TO WHETHER THIS PROCEEDING IS CORE OR NON–CORE AND AS TO WHETHER THIS COURT COULD CONDUCT THE NECESSARY JURY TRIAL.*

In *Zimmerman v. Continental Airlines, Inc.,* 712 F.2d 55, 57–59 (3d Cir.1983), *cert. denied,* 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984), the court weighed the strong federal policy in favor of enforcement of agreements among contracting parties to arbitrate certain disputes against the broad

jurisdictional grant provided in the Bankruptcy Code to center all litigation relevant to bankruptcy cases in the bankruptcy courts. Although *Zimmerman* involved a straight-forward accounts receivable proceeding (and therefore would, under the Code amendments adopted in 1984, have probably constituted a noncore proceeding), the court there had little difficulty in concluding that the special cause of expedition of bankruptcy administration by courts created for that purpose prevailed over the policy in favor of absolute enforceability of arbitration clauses, at least where the bankruptcy court exercised its "sound discretion" against deferral to arbitration. *Id.*

However, the court analyzed the issue somewhat differently in *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1155–57 (3d Cir.1989). Comparing the contemporary legal landscape to that which the court found in existence at the time of the *Zimmerman* decision, the *Hays & Co.* court found that the national policy favoring arbitration had become stronger, while the 1984 amendments to the Bankruptcy Code triggered by the decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), had weakened the policy of centering all matters related to bankruptcy cases in the bankruptcy courts. The court therefore concluded that, in noncore proceedings, a creation of the 1984 Bankruptcy Code amendments in which district courts alone, rather than the bankruptcy courts, were empowered to enter final orders unless the parties consented to allow the bankruptcy courts to do so, the bankruptcy courts had very limited discretion to refuse to enforce valid arbitration clauses.

■ The pronouncements in *Hays & Co.* did not appear to extend, in full force and effect, to core proceedings. 885 F.2d at 1155–56. Therefore, this court has concluded that, as to core proceedings, this court may exercise its full panoply of discretion, as authorized in *Zimmerman*, in determining whether to refer a proceeding before it to arbitration. *See In re Glen Eagle Square, Inc.*, 1991 WL 71782 (Bankr.E.D.Pa. May 1, 1991), *aff'd*, 132 B.R. 115 (E.D.Pa.1991). In fact, we stated in *Glen Eagle*, slip op. at *1, citing *In re FRG*, 115 B.R. 72, 74 (E.D.Pa. 1990), that "[a]s to core proceedings, deferral should not be the norm, ... and relief to allow arbitration to go forward should be granted only if the balance of hardships tips in favor of the party seeking arbitration." The different analysis utilized to determine whether deferral to arbitration is appropriate depending upon whether a proceeding is core or noncore in nature requires this court to address the issue of whether this proceeding is in fact core or noncore.

■ In *Beard v. Braunstein*, 914 F.2d 434, 443–45 (3d Cir.1990), the court held that a proceeding based on hotly-disputed claims of breaches of a pre-petition contract which were partly pre-petition and partly post-petition was noncore. Since *Beard* does not engage in an analysis of the bankruptcy policy of centering litigation in the bankruptcy court forum, this court has been unwilling to apply the analysis of *Beard* broadly when such policies are in issue. We have held, for instance, that a debtor's "garden variety" proceedings to collect liquidated pre-petition accounts receivable are core proceedings. *See In re Lila, Inc.*, 133 B.R. 588, 590 (Bankr.E.D.Pa.1991). *Accord, In re Leco Enterprises, Inc.*, 125 B.R. 385, 387–91 (S.D.N.Y.1991); and *In re Allegheny, Inc.*, 68 B.R. 183, 189–91 (Bankr.W.D.Pa.1986). We have also consistently held that proceedings which raise claims of post-petition breaches of pre-petition contracts are core in nature. *See, e.g., In re 222 Liberty Associates*, 110 B.R. 196, 199 (Bankr.E.D.Pa.1990); and *In re Jackson*, 90 B.R. 126, 129–30 (Bankr. E.D.Pa.1988), *aff'd*, 118 B.R. 243 (E.D.Pa. 1990). Most other courts addressing this issue, both in this jurisdiction, *In re Nutri/System, Inc.*, 159 B.R. 725, 726 (E.D.Pa. 1993); and *Valley Forge Plaza Associates v. Fireman's Fund Ins. Co.*, 107 B.R. 514, 517–18 (E.D.Pa.1989), and in other jurisdictions, *see, e.g., In re Arnold Print Works, Inc.*, 815 F.2d 165, 168–72 (1st Cir.1987); and *Hughes–Bechtol, Inc. v. Construction Management, Inc.*, 144 B.R. 755, 757–58 (S.D.Ohio 1992), have concurred. *Cf. In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 705–06 (2d Cir.1995) (where creditor files a

proof of claim, core status is established, irrespective of nature of claims involved, citing *Langenkamp v. Culp*, 498 U.S. 42, 44, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990)); *In re Harris Pine Mills*, 44 F.3d 1431, 1435–38 (9th Cir.1995) (claim arising post-petition, out of a post-petition sale of debtor's assets, is core); and *In re Meyertech Corp.*, 831 F.2d 410, 414–18 (3d Cir.1987) (counterclaim to a creditor's proof of claim is core, despite raising underlying substantive state law issues). *But see In re National Enterprises, Inc.*, 128 B.R. 956, 961 (E.D.Va.1991).

The parties do not dispute that the terms of the 1992 Hospital Agreement require them to submit disputes arising under that Agreement to binding arbitration. In pertinent part, § 16.1 of the 1992 Agreement states as follows:

16.1 Informal Settlement of Disputes.

Any dispute or question arising between the parties hereto and involving the application, interpretation, or performance of this Agreement, shall be settled, if possible, by amicable and informal negotiations. However, if any such issue(s) cannot be resolved in this fashion, said issue(s) shall be submitted to binding arbitration, following the procedures set forth below.

By letter dated February 15, 1995, IBC made a demand for arbitration of the claims raised in this proceeding by the Debtor.

With respect to selection of the arbitration panel, the 1992 Agreement unambiguously provides, at § 16.3, as follows:

16.3 Selection of Arbitration Panel

The question(s) or dispute(s) shall be referred to arbitration before a panel composed of one arbitrator designated by Hospital, one arbitrator designated by Blue Cross, and a third person chosen by the two thus designated within thirty (30) days of their appointment. If the two designated arbitrators cannot mutually agree upon a third person within forty-five (45) days, either of the two arbitrators may request the American Arbitration Association ["AAA"] to provide a panel or panels from which the third arbitrator shall be selected by the two designated arbitrators in accordance with the rules of the AAA.

The Debtor argues that arbitration of its claims raised in this proceeding is not possible because the mechanism for arbitrating claims under the Prior Agreements, under which it bases its claims in part, cannot be accomplished. These Agreements also unequivocally provide for arbitration of disputes, but state that the arbitration is to be selected from a list prepared by a Contract Administration Committee, which no longer exists and therefore can no longer present any such list. However, noting, per IBC's counter-argument, that 9 U.S.C. § 5 permits a court to appoint an arbitrator in the case of an arbitrator vacancy, and further noting the underlying disputed issue as to whether the Debtor can assert rights under any pre–1992 Agreement in any event, it appears to us to be logical for this court to decree that the method for selecting arbitrators under §§ 16.1 and 16.3 of the 1992 Hospital Agreement should control. We will ultimately so order.

One other issue bears mention. IBC has demanded a jury trial should this matter have to proceed to disposition in court. The Debtor has not identified any grounds for striking IBC's jury demand, thereby causing us to assume that same is timely and valid.

It is clear that, if this proceeding were determined to be noncore, the necessary jury trial would have to be conducted in the District Court. *Beard, supra*, 914 F.2d at 442–43. *Accord, In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir.1993).

With respect to this court's power to conduct jury trials in core proceedings, we begin by noting that, prior to the enactment of the provision of the Bankruptcy Reform Act of 1994 ("the BRA") relative to conduct of jury trials by bankruptcy judges, 28 U.S.C. § 157(e), it was unclear whether bankruptcy judges could conduct a jury trials. However, a substantial majority of Courts of Appeals held that they could not do so. *See In re Clay*, 35 F.3d 190, 196–98 (5th Cir.1994); *In re Stansbury Poplar Place, Inc.*, 13 F.3d 122, 127–28 (4th Cir.1993); *In re Grabill Corporation*, 967 F.2d 1152, 1153–55 (7th Cir.1992); *In re Baker & Getty Financial Services, Inc.*, 954 F.2d 1169, 1173 (6th Cir.1992); *In re Kaiser Steel Corp.*, 911 F.2d 380, 391–92

(10th Cir.1990); *In re United Missouri Bank, N.A.,* 901 F.2d 1449, 1456–57 (8th Cir. 1990). *Contra, In re Ben Cooper, Inc.,* 896 F.2d 1394 (2d Cir.1989), *vacated,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated,* 924 F.2d 36 (2d Cir.), *cert. denied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991); *In re Reading China & Glass Co. Inc.,* 126 B.R. 35, 37 (E.D.Pa.1991); and *In re Jackson,* 118 B.R. 243, 253 (E.D.Pa.1990).

Upon the enactment of 28 U.S.C. § 157(e), effective October 22, 1994, it has been established that bankruptcy judges can conduct jury trials, at least in core proceedings, but only "if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." Neither this bankruptcy judge nor any other judge in this district has been so specially designated and, even if there were such a designation, it is uncertain whether IBC would consent to our conducting the necessary jury trial.

The Debtor nevertheless argues that (1) *if* 28 U.S.C. § 157(e) were applied only to adversary proceedings arising in *cases* filed after October 22, 1994, *but see After Six, supra,* slip op. at *5 (this court assumes that 28 U.S.C. § 157(e) applies to a *proceeding* filed after October 22, 1994, even though the underlying bankruptcy case in issue was filed prior to that date); and (2) *if* this court adhered to the minority view that it could conduct a jury trial in a core proceeding under the pertinent legal authority as it existed prior to the enactment of the BRA; and (3) *if* this proceeding were unmistakably designated as core; and (4) *if* the court then exercised its discretion not to defer to contractually-mandated arbitration in any event, then (and only then), this court could conduct the necessary jury trial.

To state the weight and number of the contingencies which would have to be resolved in the Debtor's favor to allow us to conduct a jury trial is itself sufficient to indicate how we must exercise our discretion. Given the wasted time and expense which would result if we conducted a jury trial and then were determined to be incorrect in doing so on any of the four contingent bases should an (inevitable) appeal follow, we would be almost certain to stay any order so hold-ing even if we were bold enough to enter it, thus resulting in further delay. *Compare Jackson, supra* (court stayed its hand in conducting the jury trial which it deemed it was empowered to do pending appeal, and the case settled after a two-year appeal process).

We therefore conclude that it would represent an abuse of discretion to conduct a jury trial of this proceeding in this court. Since the only real alternative to a District Court jury trial is the relegation of the parties' dispute to arbitration, we easily conclude that it is an appropriate exercise of our discretion to defer the decision-making process to arbitration, irrespective of whether this proceeding is core (as we suspect it is) or noncore. The policy of centering litigation in this court, which militates against both a narrow scope of core proceedings and a broad policy of deferral to arbitration, cannot be served here. We also note that the instant proceeding raises difficult issues of fact regarding intentions of the parties in the context of reimbursements due to hospitals by service providers, with which arbitrators selected may have far more expertise than this court. This context is similar to that of the Medicare reimbursement field, lack of expertise in which prompted us to defer to an administrative tribunal on the basis of primary jurisdiction in *In re St. Mary Hospital,* 125 B.R. 422, 427–32 (Bankr.E.D.Pa.1991).

In recognition of the argument of the Debtor and the Committee on April 5, 1995, that the arbitration process may become convoluted by the intervention of other medical providers, and subject the issue at hand to even greater delay in the decision-making process than the prospect of a District Court jury trial, we will continue to exercise considerable oversight over the arbitration process. *See In re TRE Scalini, Inc.,* 178 B.R. 237, 240 (Bankr.C.D.Cal.1995) ("a six-month time frame is presumptively the appropriate timing for completing an arbitration pursuant to an arbitration agreement. If an arbitration is not completed in that time, the Court has the discretion to vacate the stay pending arbitration."); and *St. Mary Hospital, supra,* 125 B.R. at 432–33 (court deferred to the administrative process in issue for only 120

days; it is to be noted that, after several consensual continuances, that dispute was amicably and reasonably expeditiously resolved).

We will therefore enter an Order [1] staying any further judicial actions in this proceeding for a period of about 120 days, in deference to the arbitration process established in the parties' 1992 Hospital Agreement during that interval.

## D. CONCLUSION

An Order effecting the conclusions reached in this Opinion will be entered.

### ORDER

AND NOW, this 19th day of April, 1995, upon consideration of the Motion of the Plaintiff–Debtor, SACRED HEART HOSPITAL OF NORRISTOWN ("the Debtor"), for Summary Judgment in its favor ("the S/J Motion"), and the Motion of the Defendant, INDEPENDENCE BLUE CROSS ("IBC"), for Determination That Matter Is Non–Core, for Recommendation of Stay of Proceedings or Dismissal of Complaint ("the S/D Motion"), the Briefs supporting same, and the arguments of counsel relevant to same on April 5, 1995, it is hereby ORDERED as follows:

1. The S/J Motion is DENIED.

2. The S/D Motion is GRANTED in part, only as set forth in paragraphs 3 and 4 *infra*, and DENIED in all other respects.

3. The parties shall forthwith proceed under the arbitration proceeding set forth in §§ 16.1 and 16.3 of the Hospital Agreement of July 1, 1992.

4. All matters in this court in this proceeding shall be stayed, pending a further status hearing scheduled as follows, to which time the court will also continue the Debtor's Motion to bifurcate the trial of this proceeding:

WEDNESDAY, AUGUST 16, 1995, at 9:30 A.M.

and shall be held in Bankruptcy Courtroom No. 4 (Room 3620), Third Floor, United States Court House, 601 Market Street, Philadelphia, PA 19106.

---

1. Since this Order is not, in any respect, a "final order," we may enter it ourselves, as opposed to merely recommending this disposition to the District Court, even if this matter were determined to be a noncore proceeding. *See* 28 U.S.C. § 157(c)(1); *In re Fleet*, 103 B.R. 578, 587 n. 5 (E.D.Pa.1989); and *After Six, supra*, slip op. at *1.